Case No. <u>2:16-cv-05828</u>
UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

———————————————————————————

IN RE PALISADES CAPITAL PARTNERS LLC
and 1111 SUNSET BOULEVARD, LLC
———————————————————————————

IN RE HOLY HILL COMMUNITY CHURCH, Debtor.
———————————————————————————

PALISADES CAPITAL PARTNERS, LLC
and 1111 SUNSET BOULEVARD, LLC, Plaintiffs-Petitioners,
v.
UNITED STATES BANKRUPTCY COURT FOR THE CENTRAL DISTRICT
OF CALIFORNIA – LOS ANGELES DIVISION, Respondent,

1111 SUNSET, LLC, Defendant-Real Party in Interest.
———————————————————————————

From the United States Bankruptcy Court
for the Central District – Los Angeles Division
Case No. 2:14-bk-21070-WB
Adversary No. 2:15-ap-01467-WB
Honorable Julia W. Brand
———————————————————————————

**PETITION FOR WRIT OF MANDAMUS**
———————————————————————————

Greenberg Glusker Fields Claman &
Machtinger LLP
Garrett L. Hanken (SBN 057213)
Jeffrey A. Krieger (SBN 156535)
Steven A. Stein (SBN 287401)
1900 Avenue of the Stars, 21st Floor
Los Angeles, California  90067-4590
Telephone: 310.553.3610
Facsimile:  310.553.0687

Attorneys for Plaintiffs and Petitioners
Palisades Capital Partners LLC and 1111
Sunset Boulevard, LLC

# TABLE OF CONTENTS

**Page**

I.    INTRODUCTION ...................................................................................1

II.   ISSUES PRESENTED .........................................................................4

III.  FACTS NECESSARY TO UNDERSTAND THE ISSUES
PRESENTED.......................................................................................4

IV.  REASONS WHY THE COURT SHOULD ISSUE A
WRIT OF MANDAMUS ..................................................................13

V.    RELIEF SOUGHT.............................................................................14

VI.  LEGAL STANDARD ........................................................................14

VII. ARGUMENT.....................................................................................15

     1.    Palisades Has a Statutory Right to File a Writ Petition
Challenging the Expungement Order................................15

     2.    Palisades Will Be Severely Harmed Unless It is Able to File a
Writ Petition Challenging the Expungement Order..........17

     3.    The Expungement Order is Clearly Erroneous .................18

          A.    The Respondent Court Erred When it Determined
Palisades Lacked Standing.......................................19

          B.    The Respondent Court Erred When it Determined that
the Doctrine of Res Judicata Barred Palisades' Claims...........22

              i.    The Respondent Court Erred by Not Accepting as
True on a Motion to Dismiss Palisades'
Allegations that the Purported Judgment was Void,
and that Therefore Res Judicata Was Inapplicable .......23

              ii.   The Doctrine of Res Judicata Does Not Apply
Because the Validity of the Amendment was Not
at Issue, Much Less Finally Adjudicated in the
2010 Action ................................................................24

              iii.  The Respondent Court Misapplied the Primary
Rights Theory ............................................................26

          C.    Palisades Properly Recorded a Lis Pendens ............28

# TABLE OF CONTENTS
(continued)

**Page**

4.    If Allowed to Stand, the Respondent Court's Order Will
Undermine Important Policy Considerations Underlying
Bankruptcy Auctions ........................................................................29

VIII.  CONCLUSION ....................................................................................30

STATEMENT OF RELATED CASES ................................................................31

CERTIFICATE OF SERVICE ..........................................................................32

INDEX ...........................................................................................................33

68899-00007/2662454.6

# TABLE OF AUTHORITIES

**Page**

CASES

*311 S. Spring St. Co. v. Dep't of Gen. Servs.*,
  178 Cal.App.4th 1009 (2009) .......................................................... 23

*Argueta v. Banco Mexicano, S.A.*,
  87 F.3d 320 (9th Cir. 1996) ....................................................... 20, 23

*Beverly Hills Nat. Bank v. Glynn*,
  16 Cal. App. 3d 274 (1971) ............................................................ 24

*Brinton v. Bankers Pension Servs., Inc.*,
  76 Cal.App.4th 550 (1999) ............................................................. 22

*DKN Holdings LLC v. Faerber*,
  61 Cal.4th 813 (2015) .................................................................... 23

*Ferraro v. Camarlinghi*,
  161 Cal.App.4th 509 (2008) ........................................................... 25

*Fid. Nat'l Title Co. v. U.S. Small Bus. Admin.*,
  2015 WL 7077407 (E.D. Cal. Nov. 13, 2015) ................................ 16

*Formula Inc. v. Superior Court*,
  168 Cal.App.4th 1455 (2008) ......................................................... 16

*In re Abrahams*,
  2015 U.S. Dist. LEXIS 40757 (S.D. Cal. Mar. 30, 2015) ............... 17

*In re Food Barn Stores, Inc.*,
  107 F.3d 558 (8th Cir. 1997) .......................................................... 30

*In re Remmert*,
  2010 WL 6259959 (Bktcy. N.D. Cal. Dec. 22, 2010) ..................... 16

*Johnson v. Loma Linda*,
  24 Cal.4th 61 (2000) ...................................................................... 24

*Kendall-Brief Co. v. Superior Court of Orange County*,
  60 Cal.App.3d 462 (1976) .............................................................. 28

*Landeros v. Pankey*,
  39 Cal.App.4th 1167 (1995) ........................................................... 24

*Planning and Conservation League v. Castaic Lake Water Agency*,
  180 Cal.App.4th 210 (2009) ........................................................... 20

*Tennison v. California Victim Comp. & Gov't Claims Bd.*,
  152 Cal.App.4th 1164 (2007) ......................................................... 25

iii

# TABLE OF AUTHORITIES
## (continued)

**Page**

*U.S. v. Real Property Located at 22 Santa Barbara Drive*,
264 F.3d 860 (9th Cir. 2001) ............................................................................. 16

**S**TATUTES

28 U.S.C. §1964 ........................................................................................................ 16

California Code of Civil Procedure ("CCP")

    CCP § 405 et. seq. .............................................................................................. 11

    CCP § 405.39 ................................................................................................. 12, 13

    CCP § 405.31 ...................................................................................................... 18

    CCP § 405.32 ...................................................................................................... 18

    CCP § 405.35 ...................................................................................................... 13

    CCP § 405.38 ...................................................................................................... 17

    CCP § 405.5 ........................................................................................................ 16

**O**THER **A**UTHORITIES

7 Witkin, Cal. Proc. 5th Judgm § 414 (2008) ......................................................... 25

iv

# I.    __INTRODUCTION__

The expungement of a lis pendens can have disastrous consequences, extinguishing a valid claim to unique and irreplaceable real property and rendering the court's ultimate judgment ineffectual.  Recognizing this fact, California enacted a statutory scheme governing lis pendens that goes to great lengths to protect interests in real property from an erroneous expungement order.  Under this scheme, a party aggrieved by an expungement order is authorized to file a petition for writ of mandate that keeps the lis pendens in place until the writ petition is finally adjudicated. Because the consequences of an erroneous expungement are so dire, this statutory scheme expressly makes its provisions applicable to federal courts—and federal authorities have adopted and applied its provisions.

Palisades Capital Partners LLC and 1111 Sunset Boulevard, LLC (collectively "Palisades") invoke this procedure through this Petition for Writ of Mandamus ("Writ Petition") for relief from an erroneous expungement order entered by the Respondent Court. Palisades paid $30 million to purchase property from a debtor, Holy Hill Community Church ("HHCC") at a bankruptcy auction (the "Bankruptcy Auction"). Palisades acquired from HHCC not only real property (the "Real Property"), but also litigation rights to protect the viability of the Real Property. These rights included the right to litigate the validity of an easement document (the "Amendment") that severely burdens the Real Property and of

1

documents related to the easement (the "Amendment Related Documents") (collectively, the "Unauthorized Executions"). To this end, Palisades intervened in an action that had previously been filed by HHCC, filed an amended complaint seeking a declaration that the Amendment and Amendment Related Documents were invalid, and recorded a notice of pendency of the action (the "Lis Pendens").

The Respondent Court expunged the Lis Pendens (the "Expungement Order") without considering whether Palisades (a) asserted a real property claim or (b) factually established the probable validity of that claim. Instead, the Respondent Court granted a Rule 12(b)(6)[1] motion to dismiss (the "Dismissal Order") on the purported grounds (1) that Palisades lacked standing to litigate the validity of the Unauthorized Executions and (2) that the doctrine of res judicata barred Palisades' claims. In dismissing Palisades' claims, the Respondent Court unfortunately took shortcuts that resulted in an order that is clearly erroneous.

First, the Respondent Court's finding that Palisades lacked standing to pursue its claims was erroneous. This is evident from the face of the ruling: the Respondent Court found that Palisades lacked standing to bring claims on HHCC's behalf even though the Respondent Court found that Palisades and HHCC were in privity with respect to the same rights. This is also evident from the authorities relied on by the Respondent Court to make this ruling. The Respondent Court

---

[1] Federal Rule 12(b)(6) is made applicable by Rule 7012 of the Federal Rules of Bankruptcy Procedure.

2

invoked a statute, Corporations Code Section 208(a), that is facially inapplicable.

Second, the Respondent Court's finding that Palisades' claims were barred by a prior action under the doctrine of res judicata was erroneous. The claims at issue here were not and could not be at issue in the prior action. For example, Palisades challenges the validity of the judgment entered in that action (which is one of the Amendment Related Documents); there is no way that the parties in the prior action could have asserted claims challenging the validity of a judgment that had not even been entered at a time they asserted their claims. Even if the same claims were at issue, the claims asserted in the prior action were not actually litigated, and, further, resulted in a stipulated judgment, as opposed to a judgment on the merits.  Furthermore, the stipulation for judgment (another of the Amendment Related Documents) was signed by persons not authorized to act on behalf of HHCC, the party to be bound by the judgment. Case law is clear that the doctrine of res judicata is inapplicable as a matter of law in such an instance.

Since the Expungement Order was founded exclusively on the Dismissal Order and since the Dismissal Order was clearly erroneous, the Expungement Order and the Dismissal Order should be vacated.

If allowed to stand, the Expungement Order would have disastrous consequences: it would strip Palisades of valuable rights that it paid $30 million to acquire. These disastrous consequences would not, however, be limited to

3

Palisades: the Expungement Order also would undermine important policy
considerations underlying bankruptcy auctions by having the effect of depriving
purchasers such as Palisades of the benefit of their bargain.

Thus, the Court should issue a writ of mandamus vacating the Respondent
Court's orders and remanding the proceedings for further consideration.

## II.    ISSUES PRESENTED

1.    Whether the Respondent Court erred by finding that Palisades lacked
standing to prosecute challenges initiated by HHCC to the validity of the
Amendment and the Amendment Related Documents even though Palisades had
bought the right to pursue those challenges and the Respondent Court found that
Palisades and HHCC were in privity with respect to those challenges?

2.    Whether the Respondent Court erred by finding that a prior action
barred Palisades' claims in this action under the doctrine of res judicata even
though (a) the same claims were not at issue in each action, (b) the claims at issue
in the prior action were never actually litigated on the merits, and (c) Palisades
stated a meritorious claim that the resulting stipulated judgment was void?

## III.    FACTS NECESSARY TO UNDERSTAND THE ISSUES PRESENTED

On September 6, 2013, more than nine months prior to its bankruptcy filing
of June 5, 2015, HHCC filed a complaint against Defendants 1111 Sunset, LLC
("Sunset LLC"), Downtown Capital, LLC ("DC"), Yuval Bar-Zemer, its principal,

(Sunset LLC, DC, and Yuval Bar-Zemer are collectively referred to herein as the "Downtown Parties") and others in the Los Angeles County Superior Court, Case No. BC520596 (the "Bar Zemer Lawsuit"). HHCC challenged the Amendment, alleging, *inter alia*, causes of action for Injunctive Relief, Breach of Fiduciary Duty, Fraud, and Violation of Business & Prof. Code § 17200. (Complaint, Exh. "A".) On March 21, 2014, HHCC filed a First Amended Complaint in which it added Rescission and Breach of the Duty of Good Faith and Fair Lending to its allegations. On March 25, 2014, HHCC recorded a lis pendens against both Parcel A and Parcel B (as defined below). (First Amended Complaint, Exh. "B".)

After HHCC filed bankruptcy, Richard J. Laski was appointed as the chapter 11 trustee of HHCC's bankruptcy estate ("Trustee"). (Second Amended Verified Complaint ("SAC") [Dkt. No. 73], Exh. "C", ¶ 167.) Upon the effectiveness, on January 1, 2016, of the plan of reorganization of HHCC confirmed on December 17, 2015, (the "Plan"), HHCC became the Reorganized Debtor and the Trustee became the Principal of the Reorganized Debtor ("Principal"). (*Id*. at ¶ 168.) After an auction during the pendency of the HHCC bankruptcy proceeding, Palisades contracted to purchase from the Trustee real property commonly known as 1111 Sunset Blvd., Los Angeles, CA 90012 ("Parcel B"). (*Id*. at ¶ 174.)

The purchase and sale agreement (the "PSA") for the purchase of Parcel B from the Trustee by Palisades also provided for the purchase of additional property

5

and rights, and included an option for the purchase of claims described as "any claims related to transfers that are preferences under the Bankruptcy Code and claims related to the enforceability of the Reciprocal Use Agreements" (the "Reserved Claims"). The PSA defined the "Reciprocal Use Agreements" to include an easement (the "RUA") as alleged to be amended by the First Amendment to the Reciprocal Use and Easement Agreement dated May 10, 2012 (the "Amendment"). (*Id*. at ¶ 175.) Palisades closed on the purchase under the PSA and now owns Parcel B. (*Id*. at ¶ 176.) Palisades exercised its option and, on or about November 18, 2015, purchased the Reserved Claims from the Trustee. As a result of Palisades' purchase of the Reserved Claims, Palisades now owns all of the claims related to the enforceability of the RUA and/or the Amendment that were formerly owned, first, by HHCC and, later, by the Trustee. (*Id*. at ¶ 177.) Defendant Sunset, LLC—which is not affiliated with 1111 Sunset Boulevard, LLC—now owns the real property commonly known as 1115 Sunset Blvd., Los Angeles, CA 90012 ("Parcel A"). (*Id*. at ¶ 178.)

Sunset LLC claims to own the Reciprocal Use Agreements, which purport to burden Parcel B for the benefit of Parcel A. (*Id*. at ¶ 179.) While they are based on several documents, the Reciprocal Use Agreements consist, essentially, of two parts, (a) the RUA and (b) the Amendment. The Amendment is embodied in the judgment and permanent injunction (the "Purported Judgment"). The Amendment

6

is also referred to in, and was purportedly created pursuant to, a purported

settlement agreement and purported amendments thereto (the "Purported

Settlement"). The Amendment is also referred to in, and was purportedly created

pursuant to, a purported stipulation for the Purported Judgment (the "Purported

Stipulation").  On or about July 13, 2012, in support of the foregoing documents,

persons purporting to act on behalf of HHCC (the "Tak Parties") also executed a

purported Written Consent of the Board of Elders (the "Purported Consent")

(collectively, the "Amendment Related Documents"). (*Id*. at ¶ 180.)

The Amendment imposes significantly greater burdens on Parcel B than did

the RUA. (*Id*. at ¶ 181.) The Amendment and the Amendment Related Documents

were not executed by HHCC. Rather, the purported executions of those documents

on behalf of HHCC (the "Unauthorized Executions") were made by persons who

lacked authority to execute those documents on behalf of HHCC. Beginning in late

2010, HHCC was embroiled in a series of internal disputes. Those internal disputes

continued up to the filing of and throughout the pendency of the HHCC bankruptcy

case. The Unauthorized Executions occurred during a time when a higher church

body, the Western California Presbytery ("WCP"), had the power to exercise and

was exercising its right to control the property of HHCC due to those internal

disputes. The Unauthorized Executions also occurred during a time when the Los

Angeles Superior Court (the "WCP Court"), in a lawsuit captioned *The Western*

*California Presbytery, et al. v. Dong Sub Bang, et al.* (Case No. BC 459793) (the "WCP Action"), was also exercising control over the real property transactions being taken purportedly on behalf of HHCC. Since neither the WCP nor the WCP Court had authorized the persons who made the Unauthorized Executions to sign the Amendment or the Amendment Related Documents on behalf of HHC, the Unauthorized Executions were not the lawful acts of HHCC. (*Id.* at ¶ 182.)

At this time, Sunset LLC was aware of the internal dispute within HHCC, was aware that WCP had, based on that dispute, validly taken over control of the property of HHCC, and was aware that the WCP Court was also exercising control over real property transactions by HHCC. Despite that knowledge, Sunset LLC neither sought nor obtained approval of the Unauthorized Executions from either WCP or the WCP Court. Sunset LLC neither sought nor obtained any confirmation from either the WCP or the WCP Court that the persons making the Unauthorized Executions were authorized to do so on behalf of HHCC. Sunset LLC was aware that neither WCP nor the WCP Court had granted authority to make the Unauthorized Executions to the persons who purported to make the Unauthorized Executions. Sunset LLC therefore had actual knowledge that the persons making the Unauthorized Executions did not have authority to do so. (*Id.* at ¶ 183.) The signatures purportedly on behalf of HHCC on the Amendment and the Amendment Related Documents are therefore not the signatures of HHCC and were not placed

8

on the Amendment and the Amendment Related Documents at the direction of the entities lawfully in control of the property of HHCC. (*Id*. at ¶ 184.)

If the Amendment and the Amendment Related Documents are left of record and/or uncancelled, Palisades will suffer continued interference with its ownership, use, and occupancy of Parcel B. The Downtown Parties have refused to surrender the Amendment and the Amendment Related Documents, have refused to withdraw them from the public record, and continue to claim rights thereunder and to use Parcel B on a claim of right thereunder. (*Id*. at ¶ 185.)

In addition, during the negotiation of the Amendment and the Amendment Related Documents, and before and at the time of the Unauthorized Executions, Sunset LLC knew that: HHCC was incapacitated by internal disputes among the members of HHCC; HHCC was under severe financial distress because of those internal conflicts; the persons to whom Sunset LLC presented the Amendment and the Amendment Related Documents could not read or understand those documents because they spoke little or no English; and the lawyer purporting to represent HHCC was acting with a conflict of interest and was using the transaction to get his fees paid without regard to the injury that the Amendment and the Amendment Related Documents would cause to the property of HHCC. (*Id*. at ¶ 186.)

Before and during the negotiation of the Amendment and the Amendment Related Documents, and before and at the time of the Unauthorized Executions,

9

Sunset LLC: drafted the Amendment and the Amendment Related Documents to be oppressively one-sided and unfair to HHCC, and to effectively render Parcel B unusable to HHCC and essentially unmarketable to anyone other than Sunset LLC; included in the parking relocation provision of the Amendment language that Sunset LLC intended to use to render that provision incapable of implementation so that the oppressive burden of the parking easement on Parcel B could not be mitigated; intended to use a deed of trust (the "Deed of Trust") acquired by Sunset LLC's affiliate, DC, together with the Amendment and the Amendment Related Documents to acquire the entirety of Parcel B for no or minimal further consideration beyond the amount owed by HHCC to DC; intended to remove the cafeteria in the basement of the building on Parcel A and to convert the basement into a restaurant and a new parking area; intended to use ambiguous language that Sunset LLC had inserted into the Amendment to justify encroachments onto Parcel B; and, with intent to induce HHCC and the persons who made the Unauthorized Executions to enter into the Amendment and the Amendment Related Documents, Sunset LLC suppressed and concealed the foregoing facts, which were material to the Unauthorized Executions from HHCC, the persons who made the Unauthorized Executions, WCP, and the WCP Court. (*Id*. at ¶¶ 186-87.)

  After HHCC filed its bankruptcy case in order to stave off foreclosure by DC under the Deed of Trust, all of HHCC's rights against the Defendants,

including those alleged in the First Amended Complaint, became part of HHCC's bankruptcy estate. On August 31, 2015, the Trustee removed the Bar Zemer Lawsuit to the bankruptcy court, and the Bar Zemer Lawsuit became this adversary proceeding, no. 2:15-ap-01467-WB (the "Adversary Proceeding"). (Notice of Removal, Exh. "D".) By order entered on April 15, 2016, Palisades was allowed to intervene in the Adversary Proceeding to prosecute the Reserved Claims.

On February 16, 2016, Sunset LLC filed a motion to expunge the lis pendens. (First Motion to Expunge Lis Pendens [Dkt. No. 38], Exh. "E".). Palisades opposed the motion. (Amended Opposition to First Motion to Expunge [Dkt. No. 55], Exh. "F".). The Respondent Court granted the motion based upon its determination that the First Amended Complaint did not contain a "real property claim" as required by California Code of Civil Procedure §405 et. seq., the California lis pendens statute. However, the Respondent Court specifically authorized Palisades to file a Second Amended Complaint and to record a new lis pendens. (Order Granting First Motion to Expunge [Dkt. No. 70], Exh. "G".).

On April 18, 2016, Palisades filed the SAC, the Sixth Cause of Action of which unquestionably stated a real property claim. (Exh. "C".) Palisades also recorded a new lis pendens. (Notice of Pendency of Action [Dkt. No. 74], Exh. "H".) On May 18, 2016, Sunset LLC filed a motion to dismiss the Second and Sixth Causes of Action of the SAC (the "Motion to Dismiss"). (Motion to Dismiss

11

[Dkt. No. 76], Exh "I".) Concurrently, Sunset LLC filed another motion to expunge the lis pendens (the "Motion to Expunge"). (Second Motion to Expunge Lis Pendens [Dkt. No. 77], Exh. "J".)  On June 21, 2016, the Respondent Court held a hearing on the Motions to Dismiss and Expunge.  (Transcript of Hearing, Exh. "K".)  On July 15, 2016, the Respondent Court entered its Order Granting Defendant 1111 Sunset, LLC's Motion to Dismiss (the "Dismissal Order") on the grounds set forth in its Memorandum of Decision of the same date. (Memorandum of Decision, Exh. "L".) The decision stated that the Dismissal Order was based on two grounds: (1) that res judicata barred Palisades from prosecuting the Second and Sixth Causes of Action in the SAC; and (2) that Palisades lacked standing to challenge the Amendment. (Dismissal Order [Dkt. No. 99], Exh. "M".) Also on July 15, 2016, the Respondent Court entered its Expungement Order on the sole grounds that the Second and Sixth Causes of Action had been dismissed pursuant to the Dismissal Order. (Expungement Order [Dkt. No. 98], Exh. "N".)

On July 19, 2016, Sunset LLC lodged with the Respondent Court a second order regarding the Motion to Expunge (the "Proposed Order").  In the Proposed Order, Sunset LLC asked the Respondent Court to authorize the immediate recordation of the order. (Notice of Lodgment [Dkt. No. 104], Exh. "O".) In doing so, Sunset LLC failed to take into account California Code of Civil Procedure ("CCP") § 405.39, which authorizes a party aggrieved by an expungement order to

12

file a petition for writ of mandate challenging the order within 20 days after it is served, and CCP § 405.35, which provides that an expungement order shall not be effective or be recorded until that 20 days has expired or, if a writ petition is filed, until the petition is "finally adjudicated." Sunset LLC filed its Motion to Expunge under this scheme, and, as discussed below, authorities are clear that this scheme applies when the validity of a lis pendens is litigated in federal court. Palisades objected on this basis and inserted language regarding the required waiting period in a revised Proposed Order. (Obj. to Defendant's Form of Order Expunging Lis Pendens [Dkt. No. 103], Exh. "P".)

Sunset LLC responded, arguing that the rights set forth in CCP §§ 405.39 and 405.35 are unavailable to Palisades. (Response to Plaintiff's Objection [Dkt. No. 105], Exh. "Q".) Due to the position taken by Sunset LLC and the timing requirements under the Federal Rules of Bankruptcy Procedure and the CCP, in addition to filing this Writ Petition, Palisades has filed a parallel Notice of Appeal of the Expungement Order, a motion for leave to file an interlocutory appeal, and a motion for a stay pending appeal.

## IV.   REASONS WHY THE COURT SHOULD ISSUE A WRIT OF MANDAMUS

Mandamus relief is necessary because the Respondent Court took numerous shortcuts to dismiss Palisades' claims that resulted in a clearly erroneous order. The Respondent Court found that Palisades lacked standing to prosecute

13

challenges initiated by HHCC to the validity of the Amendment and the Amendment Related Documents even though Palisades had bought the right to pursue those challenges and the Bankruptcy Court found that Palisades and HHCC were in privity with respect to those challenges.  The Respondent Court also found that Palisades' claims were barred by the doctrine of res judicata even though (a) the same claims were not at issue in each proceeding, (b) the claims at issue in the prior action were never actually litigated on the merits, and (c) Palisades stated a meritorious claim that the stipulated judgment was void. Mandamus relief would vindicate Palisades' rights in the real property and send a message that purchasers of assets in a bankruptcy auction are entitled to receive the benefit of their bargain.

## V.    <u>RELIEF SOUGHT</u>

The Court should issue a writ of mandamus commanding the Respondent Court to vacate its order granting the Expungement Motion and remanding this case for further proceedings consistent with the Court's decision.

## VI.    <u>LEGAL STANDARD</u>

This Court weighs five factors in determining whether to grant a writ of mandamus under the All Writs Act, 28 U.S.C. § 1651:

> (1) The party seeking the writ has no other adequate means, such as a direct appeal, to attain the relief he or she desires. (2) The petitioner will be damaged or prejudiced in a way not correctable on appeal. (3) The district court's order is clearly erroneous as a matter of law. (4) The district court's order is an oft-repeated error, or manifests a persistent disregard of the federal rules. (5) The district court's order raises new

14

and important problems, or issues of law of first impression.

*Douglas v. U.S. Dist. Court*, 495 F.3d 1062, 1065-66 (9th Cir. 2007) (internal

quotation marks omitted). Not every one of the five factors must be satisfied in

order to warrant a writ. *Valenzuela–Gonzalez v. District Court*, 915 F.2d 1276,

1279 (9th Cir. 1990) ("all five factors need not be satisfied at once").

## VII.   ARGUMENT

### 1.   Palisades Has a Statutory Right to File a Writ Petition Challenging the Expungement Order

California has enacted a statutory scheme governing lis pendens that goes to

great lengths to protect a plaintiff's interest in real property from an erroneous

expungement order. CCP § 405.39 authorizes a party aggrieved by an

expungement order to file a petition for writ of mandate challenging the order

within 20 days after it is served. CCP § 405.35 provides that an expungement order

shall not be effective until the writ petition is "finally adjudicated."

Because the consequences of an erroneous expungement are so dire, this

statutory scheme expressly makes its provisions applicable to federal courts.

Section 405.5 states: "This title applies to an action pending in any United States

District Court in the same manner that it applies to an action pending in the courts

of this state." Federal law also recognizes that, in the context of a lis pendens

action in federal court, state procedural law governs. *See* 28 U.S.C. § 1964.

Consistent with these provisions, state and federal courts have recognized

that "[t]he federal scheme provides that federal courts <u>must</u> apply the <u>entirety</u> of the California statutory law governing lis pendens." *Formula Inc. v. Superior Court*, 168 Cal.App.4th 1455, 1463 (2008) (emphasis added); *see also Fid. Nat'l Title Co. v. U.S. Small Bus. Admin.*, 2015 WL 7077407, at *1 (E.D. Cal. Nov. 13, 2015) (citing CCP § 405.5 and 28 U.S.C. §1964 for the proposition that "[s]tate law provides the rule of decision should a party move to expunge the [lis pendens]"); *United States. v. Real Property Located at 22 Santa Barbara Drive*, 264 F.3d 860, 870 (9th Cir. 2001) (applying state procedural lis pendens law).

As the foregoing makes clear, the state procedure governing lis pendens applies in federal court. As a result, there can be no question that Palisades has a statutory right to file this Writ Petition challenging the Expungement Order, and that the Expungement Order may not be recorded until the Writ Petition is finally adjudicated. The first factor of 28 U.S.C. § 1651 is therefore satisfied.

Despite this clear authority, Sunset LLC has contended before the Respondent Court that the writ procedures set forth in Section 405.30, *et seq.*, do not apply in federal court. (Exh. "Q", pp. 4-5.) The two unpublished cases relied on by Sunset LLC for this proposition are inapplicable here. In *In re Remmert*, 2010 WL 6259959, at *3-*4 (Bktcy. N.D. Cal. Dec. 22, 2010), the court recognized that "generally an order expunging a lis pendens is held to be interlocutory because it does not end the litigation on the merits," and, in fact, granted leave to file an

16

interlocutory appeal of an expungement order.  In *In re Abrahams*, 2015 U.S. Dist. LEXIS 40757, at *5 (S.D. Cal. Mar. 30, 2015), the court found that the writ petition at issue "relate[d] to a different bankruptcy proceeding than the proceeding at issue in this appeal." The courts in *Abrahams* and *Remmert* were not asked and never addressed the waiting period set forth in CCP §§ 405.35, 405.38.

Sunset LLC's argument also is disingenuous.  Sunset LLC brought the Motion to Expunge pursuant to the statutory scheme set forth in CCP §405 et. seq. Now that Sunset LLC has obtained a ruling in its favor, it wants to ignore the balance of the same statute it invoked in obtaining relief. This blatant attempt to use Section 405.30 *et. seq*. as both a sword and a shield is plainly improper.

## 2.    Palisades Will Be Severely Harmed Unless It is Able to File a Writ Petition Challenging the Expungement Order

As discussed above, there is a strong presumption, reflected in California and federal statutes, and in case law, that an erroneous expungement order inflicts severe harm on the aggrieved party. This is because real property is presumed to be unique, and the recordation of an expungement order has the effect of validating title to the real property at issue. As one leading treatise has explained:

> [U]pon expungement or withdrawal, not only is the knowledge or notice gained from the lis pendens or the lawsuit effectively purged as if it was never received or imparted; it is as if the person who acquires an interest in the property had no knowledge or notice from any other source, whether actual, implied or constructive, that has a bearing on the action or the matters alleged or claimed in the action. . . . In other words, all such transferees or encumbrancers become bona fide purchasers as to the

17

judgment as a matter of law, and are not bound by it.

4 Cal. Real Est. ["Miller & Starr"] § 10:156 (4th ed.).

Sunset LLC already has indicated that it intends to immediately record the Expungement Order and remove the lis pendens. (Exh. "O".) It is highly likely it will then transfer the real property to a third party, who will then assert that they are a bona fide purchaser. If successful, this would leave Palisades without an adequate remedy. *Howard v. Fed. Home Loan Mortg. Corp.*, 2012 WL 639458, at *4 (E.D. Cal. Feb. 24, 2012) (monetary damages are not an adequate remedy because real property is presumed to be unique). This Writ Petition is necessary to prevent such a transfer and preserve both Palisades' rights in the real property and the status quo. Thus, the second factor of 28 U.S.C. § 1651 is satisfied.

## 3.   The Expungement Order is Clearly Erroneous

A lis pendens should not be expunged if the plaintiff has pled, or, with leave to amend, can plead, "a real property claim" (CCP § 405.31) and if the plaintiff has "established by a preponderance of the evidence the probable validity of the real property claim" (CCP § 405.32).

The Respondent Court did not make a specific finding on either of these issues, but instead based its Expungement Order entirely on its Dismissal Order. In doing so, the Respondent Court tacitly found that Palisades did not have a strong enough case on the merits—for legal reasons, and not factual ones. Thus, if

18

Palisades can show that the Dismissal Order was erroneous, then the case would need to be remanded in order for the Respondent Court to determine whether Palisades asserted a real property claim and established by a preponderance of the evidence the probable validity of its real property claim.

As discussed below, the Dismissal Order was erroneous. As also discussed below, on remand, Palisades will be able to show that it asserted "a real property claim" and will establish the probable validity of the real property claim.

## A.    The Respondent Court Erred When it Determined Palisades Lacked Standing

In its Dismissal Order, the Respondent Court erroneously ruled that Palisades lacks standing to challenge the validity of the Unauthorized Executions based on the Court's belief that, under California Corporations Code Section 208(a), Palisades "remains a corporate outsider and a stranger to the 2010 Action":

> A corporate outsider cannot bring suit to challenge a corporation's management or control. . . . This principle is codified in Section 208(a) of the California Corporations Code[. . . .]
>
> . . . Palisades may have assumed certain property rights, formerly held by [HHCC], as a result of Palisades' purchase of Parcel B, but this circumstance does not mean that Palisades in effect becomes [HHCC] (the corporation) or an insider to [HHCC]. The PSA between Palisades and the Trustee did not confer on Palisades any right to participate in or otherwise affect [HHCC's] corporate governance. Thus, Palisades remains a third-party corporate outsider and has not become a shareholder, officer, or director of [HHCC]. Therefore, under California law, Palisades lacks standing to challenge [HHCC's] management or control, and this bar includes any challenge to the powers of management, including the power to enter into the

19

[Amendment] with Sunset.

(Exh. "L", at pp. 6, 10.) (internal quotation marks and citation omitted).  In doing

so, the Respondent Court committed four independent legal errors:

First, the Respondent Court's ruling is facially inconsistent. The Respondent

Court expressly found that Palisades and HHCC are in privity for the purposes of

res judicata: "Palisades' purchase of Parcel B, formerly owned by Debtor, puts

Palisades in privity with Debtor." (Exh. "L", at p. 9:8-9.) It is hornbook law that

parties in privity, such as Palisades and HHCC, possess the "same legal rights."

*Planning and Conservation League v. Castaic Lake Water Agency*, 180

Cal.App.4th 210, 229-30 (2009). This is because parties in privity have a "mutual

or successive relationship to the same thing or right of property." *Peterson v. Lamb*

*Rubber Co.*, 54 Cal.2d 339, 347, (1960). Palisades clearly alleged that it acquired

HHCC's rights relating to the Real Property, including the right to litigate claims

relating to the Real Property.[2] This includes claims relating to the validity of the

Unauthorized Executions, each of which implicates rights relating to the Real

Property. Thus, it necessarily follows from the Court's finding that Palisades and

HHCC are in privity, and that Palisades had standing to challenge the

Unauthorized Executions. Yet the Court did not identify any reason, nor is there

one, for finding, on the one hand, that Palisades and HHCC are in privity, and thus

---

[2] The Respondent Court was required to accept these allegations as true on a motion to dismiss. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996).

have the "same legal rights" for the purpose of res judicata, and, on the other, that Palisades does not have the right to challenge the Unauthorized Executions.[3] By not following the logic of its own ruling, the Court committed legal error. *See Northstar Fin. Adv. Inc. v. Schwab Invs.*, 779 F.3d 1036, 1047 (9th Cir. 2015) ("[T]the assignee of a cause of action stands in the shoes of the assignor . . . and unquestionably has the same standing to file a complaint that the assignor could have filed.").

Second, the Respondent Court's reliance on Section 208 was misplaced. Section 208 "applies only to those acts that violate the articles or exceed the authority of the directors in connection with dissolution and winding up under Corp.C. 1800 et seq." 9 Witkin, Summary 10th Corp § 122 (2005) (emphasis added). The Unauthorized Executions did not involve the "dissolution and winding up" of HHCC. As a result, Section 208 is facially inapplicable.

Third, the Respondent Court erred by not finding that the Bankruptcy Court's approval of the PSA through the Bankruptcy Auction itself gave Palisades standing to challenge the validity of the Unauthorized Executions on the grounds that the Bankruptcy Court specifically approved the sale of the Reserved Claims to Palisades. Under the plain language of the PSA, the claims challenging the validity of the Unauthorized Executions were within the scope of the Reserved Claims that

---

[3] To make this determination, the Respondent Court would have needed to undertake a "close examination of the circumstances"—which it never did. *Citizens for Open Access  v. Seadrift Assn.*, 60 Cal.App.4th 1053, 1070 (1998).

Palisades acquired, since they are "claims related to the enforceability of the Reciprocal Use Agreements."

Fourth, the Court erred because HHCC, through the Principal, is still a plaintiff in this separate Adversary Proceeding and indeed has a financial stake in the Reserved Claims that the Respondent Court has now eviscerated. The Reserved Claims Option Agreement states that the HHCC bankruptcy estate is entitled to a percentage of any monetary recovery from the prosecution of the Reserved Claims.

As the foregoing makes clear, Palisades is not an "outsider," but instead is, through its acquisition of HHCC's rights, in privity with HHCC, and thus has standing to challenge the Unauthorized Executions. At a minimum, dismissal was not appropriate because the scope of Palisades' litigation rights is a disputed factual issue, which is currently being litigated, in part, in a separate adversary proceeding. In finding that Palisades lacked standing, the Respondent Court took a shortcut that permitted it to avoid having to address the substance of Palisades' allegations. This was improper, and warrants mandamus relief.

**B.     The Respondent Court Erred When it Determined that the Doctrine of Res Judicata Barred Palisades' Claims**

"The doctrine of res judicata precludes the relitigation of certain matters which have been resolved in a prior proceeding under certain circumstances." *Brinton v. Bankers Pension Servs., Inc.*, 76 Cal.App.4th 550, 556 (1999). Relevant to this dispute, the doctrine of res judicata applies if the second suit involves "the

same cause of action . . . after a final judgment on the merits in the first suit." *DKN Holdings LLC v. Faerber*, 61 Cal.4th 813, 824 (2015).

> **i.     The Respondent Court Erred by Not Accepting as True on a Motion to Dismiss Palisades' Allegations that the Purported Judgment was Void, and that Therefore Res Judicata Was Inapplicable**

The Respondent Court found that the doctrine of res judicata barred Palisades from challenging the validity of the Unauthorized Executions because Palisades (or its predecessor in interest) either could have, or did, raise the claims at issue in this dispute in prior litigation (the "2010 Action"), which resulted in the Purported Judgment. However, Palisades clearly asserted, via a verified complaint, that the Purported Judgment was void because, *inter alia*, it is the product of the Purported Stipulation and the Purported Settlement signed by the Tak Parties, who, as discussed above, did not have authority to bind HHCC, and whose consent was improperly procured by the Downtown Parties. It is axiomatic that a void judgment cannot form the basis for the application of the doctrine of res judicata. *See 311 S. Spring St. Co. v. Dep't of Gen. Servs.*, 178 Cal.App.4th 1009, 1015 (2009). It is also axiomatic that the Respondent Court was required to accept Palisades' allegations as true for the purpose of a motion to dismiss. *Argueta*, 87 F.3d at 324. If the Respondent Court had accepted Palisades' allegations as true, there can be no question that the doctrine of res judicata would have been inapplicable. Yet the Respondent Court did not even address Palisades' allegations in any meaningful

68899-00007/2662454.6

way, much less accept them. The Respondent Court's failure to do so was in error.

The Respondent Court did not consider Palisades' allegations as to the validity of the Purported Judgment in any meaningful way because it seemingly conflated its conclusion that Palisades lacked standing with its res judicata analysis. In essence, the Respondent Court determined that Palisades lacked standing, and that therefore the Respondent Court could ignore allegations that a stipulated judgment signed without authority is void. As discussed above, the Respondent Court erred in that conclusion. Had the Respondent Court not bootstrapped its erroneous standing determination and accepted Palisades' allegations as true, the Respondent Court would have had to conclude that the Purported Judgment was void and could never be a basis for res judicata.

### ii. The Doctrine of Res Judicata Does Not Apply Because the Validity of the Amendment was Not at Issue, Much Less Finally Adjudicated in the 2010 Action

"Prior litigation by the same parties on a different cause of action has a collateral estoppel effect <u>only as to those issues litigated and determined in the prior action</u>." *Landeros v. Pankey*, 39 Cal.App.4th 1167, 1171 (1995) (emphasis added). A final judgment is res judicata only if it was rendered on the merits. *See Johnson v. Loma Linda*, 24 Cal.4th 61, 77 (2000). "The judgment is on the merits if the substance of the claim is tried and determined[.]" *Beverly Hills Nat. Bank v. Glynn*, 16 Cal. App. 3d 274, 286 (1971) (internal quotation marks omitted). "The

24

effect of a judgment as collateral estoppel is confined to issues actually litigated."
7 Witkin, Cal. Proc. 5th Judgm § 414 (2008). A stipulated judgment "is binding on
the parties to the extent they have *consented* to be bound by it." *Ferraro v.
Camarlinghi*, 161 Cal.App.4th 509, 540 (2008).  Thus, a "consent judgment is not
usually given preclusive effect in subsequent litigation on a different cause of
action, unless the parties manifest an intent in the consent judgment to give it such
preclusive effect." *Tennison v. Cal. Victim Comp. & Gov't Claims Bd.*, 152
Cal.App.4th 1164, 1176 (2007) (internal quotation marks omitted).

  The Respondent Court found res judicata applied because it believed that
HHCC raised the same claims in a Cross Complaint in the 2010 Action that
Palisades is raising now. Yet the above-referenced case law is clear that the
doctrine of res judicata does not apply to issues that are not "actually litigated,"
and, further, that issues are not "actually litigated" if they are resolved through a
stipulated judgment. There is no dispute that, even if the claims at issue here were
raised in the Cross Complaint—as discussed below, they were not—they were
never actually adjudicated. There is also no dispute that the Purported Judgment
was not a judgment on the merits, but instead was a stipulated judgment.
Accordingly, as a matter of law, the unlitigated claims purportedly raised in the
Cross Complaint could not have acted as a bar to the claim at issue in this action.

### iii.    The Respondent Court Misapplied the Primary
Rights Theory

To determine whether the same cause of action was raised in two different

lawsuits, California courts apply a primary rights theory: "[A] cause of action is (1)

a primary right possessed by the plaintiff, (2) a corresponding primary duty

devolving upon the defendant, and (3) a harm done by the defendant which

consists of a breach of such primary right and duty." *City of Martinez v. Texaco

Trading & Trans., Inc.*, 353 F.3d 758, 762 (9th Cir. 2003).

The Respondent Court misapplied this theory, concluding that the 2010

Action sought to enforce the same primary rights as in this action.  The Respondent

Court's conclusion is impossible because the primary rights being addressed in the

2010 Action were the enforceability of the RUA, a document executed by persons

authorized to do so.  The primary rights being addressed in the Adversary

Proceeding are the enforceability of the Amendment and the Amendment Related

Documents, documents that Palisades has alleged were executed by persons

without the requisite authority.  Wrongful acts that allegedly violated the relevant

primary rights at issue in the 2010 Action were interferences with the RUA (as

alleged in the Complaint) or with the cafeteria in the basement of the building on

Parcel A (as alleged in the Cross Complaint).  Wrongful acts that allegedly

violated the relevant primary right in issue in this action are the wrongful acts and

concealments alleged in the Second and Sixth Causes of Action of the SAC, none

of which were the subject of the Complaint or Cross Complaint in the 2010 Action.
For example, if there were an action for breach of the RUA based on a 2010
interference with the RUA, the judgment in that case would not preclude a new
action based on a different interference in 2015 with the RUA.[4]

Indeed, although the Respondent Court found that Palisades is "seeking to
enforce the same rights that [HHCC] sought to enforce in the 2010 Cross-
Complaint," a number of the Amendment Related Documents that Palisades
alleges are invalid <u>were not even in existence</u> at the time HHCC filed its Cross
Complaint in the 2010 Action.  For example, Palisades alleges the Purported
Judgment is void. HHCC could not challenge in its Cross Complaint the validity of
a judgment that had not even been entered yet.

Further, the harm suffered, and relief sought, was and is different in each
action. The 2010 Action was an action for damages for breach of contract,
nuisance, and trespass.  The greatest relief the Downtown Parties could have
obtained through litigation of that case was an award of money damages.  HHCC's
Cross Complaint merely sought damages and enforcement of HHCC's right to use
the cafeteria in the building on Parcel A.  The worst result that HHCC could have
suffered under the Cross Complaint would have been a declaration that it could not
use the cafeteria and an award of attorneys' fees against it.  There is no way the

---

[4] The Respondent Court's misapplication of the primary rights theory is evidenced by the Expungement Order itself. The Expungement Order states that HHCC sought to "enforce the RUA." Yet Palisades is not seeking to "enforce" the RUA, but rather to reinstate the RUA by invalidating the Amendment and Amendment Related Documents.

2010 Action could, *through litigation*, have resulted in imposition of the
Amendment. Importantly, there is no way the WCP should have expected the 2010
Action to result in the Purported Judgment ultimately entered in that case. The
Amendment, therefore, was not the product of litigation of the issues actually
raised in the pleadings in the 2010 Action. Instead, what apparently happened is
that the Downtown Parties duped some persons claiming to be members of HHCC
into purporting to give away, for nothing, substantial portions of HHCC's property.

Accordingly, the Respondent Court committed numerous legal errors
justifying mandamus relief, and the third factor of 28 U.S.C. § 1651 is satisfied.

### C.    Palisades Properly Recorded a Lis Pendens

As the foregoing makes clear, the Dismissal Order was erroneous.  Because
the Expungement Order was based on the Dismissal Order, a writ of mandamus
should issue directing the Respondent Court to vacate the Expungement Order and
ordering the Respondent Court to determine whether Palisades has asserted a real
property claim and has established the probable validity of its real property claim.

On remand, Palisades would be able to show that it demonstrated both of
these requirements. First, Palisades asserted a real property claim because it
alleged that the easement burdening the Real Property it purchased is invalid, and
disputes regarding the validity of an easement have long been recognized as proper
claims for a lis pendens. *Kendall-Brief Co. v. Superior Court of Orange County*, 60

Cal.App.3d 462 (1976). Second, Palisades established the probable validity of its

claims because it alleged, through its <u>verified</u> SAC, facts showing that the

Unauthorized Executions are invalid because (a) the Tak Parties did not have

actual authority to enter into them on behalf of HHCC, and (b) the consent of the

Tak Parties was procured through misconduct by Sunset LLC.

**4.    If Allowed to Stand, the Respondent Court's Order Will Undermine
Important Policy Considerations Underlying Bankruptcy Auctions**

Palisades had no notice, and was completely unaware, of the Downtown

Parties' belief that the right to litigate claims relating to the Real Property was

excluded from the scope of rights sold to Palisades.  To the contrary, HHHC had

filed an action challenging the validity of the execution of the Amendment that was

pending at the time of the sale to Palisades.  Palisades contracted to buy, and

bought, the Reserved Claims, which expressly included any claims relating to the

validity of the Amendment.  These rights were integral to the deal.

Stripping bona fide purchasers of property, such as Palisades, of such

integral rights, without any notice, undermines important policy considerations

underlying bankruptcy auctions.   Case law is clear that, "in the absence of

knowledge to the contrary, bidders [can] reasonably rely on" the terms of the PSA

in a bankruptcy auction. *See In re Laughinghouse*, 51 B.R. 869, 876 (Bankr.

E.D.N.C. 1985).  This is because "important notions of finality and regularity in

judicial actions are appeased if the court acts consistently with the rules by which

29

the particular sale is conducted and in compliance with the bidders' reasonable expectations." *In re Food Barn Stores, Inc.*, 107 F.3d 558, 565 (8th Cir. 1997).

Thus, public policy favors mandamus relief because purchasers of assets at a bankruptcy auction should be able to rely on what their contract says and not have rights and value stripped away without preserving the right to meaningful appellate review. Accordingly, the fourth and fifth factors of 28 U.S.C. § 1651 are satisfied.

## VIII.  CONCLUSION

The Court should issue a writ of mandamus commanding the Respondent Court to vacate its order granting the Expungement Motion and remanding this case for further proceedings consistent with the Court's decision.

DATED: August 4, 2016            GREENBERG GLUSKER FIELDS
                                 CLAMAN & MACHTINGER LLP


                                 By: */s/ Garrett L. Hanken*
                                     GARRETT L. HANKEN
                                     Attorneys for Plaintiffs and Petitioners
                                     Palisades Capital Partners, LLC and
                                     1111 Sunset Boulevard, LLC

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that, on August 4, 2016, I caused the foregoing Petition for Writ of Mandamus with attached Appendix to be served by electronic mail, and first class mail, on the following parties:

### <u>Electronic Mail</u>

Richard T Baum    rickbaum@hotmail.com, rickbaum@ecf.inforuptcy.com

Bernard D Bollinger    bbollinger@buchalter.com

IFS_filing@buchalter.com;smartin@buchalter.com

Andy Kong    Kong.Andy@ArentFox.com

Richard J Laski (TR)    rlaski@wilshirellc.com

Matthew A Lesnick    matt@lesnickprince.com, matt@ecf.inforuptcy.com

Aram Ordubegian    ordubegian.aram@arentfox.com

United States Trustee (LA)    ustpregion16.la.ecf@usdoj.gov

Vanessa H Widener    vhw@amclaw.com, lmg@amclaw.com

Jaenam J. Coe coelaw@gmail.com

W. Dan Lee dle@leelawltd.com

J. Scott Bovitz bovitz@bovitz-spitzer.com

Gina Leago leago@parkermillsllp.com

Victor Sahn vsahn@sulmeyerlaw.com

### <u>First Class Mail</u>

Honorable Julia W. Brand

The United States Bankruptcy Court

Central District of California

Edward R. Roybal Federal Building and Courthouse

255 E. Temple St.

Los Angeles, CA 90012

68899-00007/2662454.6

Hae Hoon Owh
13116 Avenida Santa Tecla #717-C
La Mirada, CA 90638-3278

Metropolitan Water
District
700 N. Alameda St.
Los Angeles, CA 90012

Sung Yeol Yim
11715 La Tierra Court
Northridge, CA 91326-
1939

Bernard D Bollinger, Jr
Buchalter Nemer
1000 Wilshire Blvd.,
Suite 1500
Los Angeles, CA 90017

Law Offices of Carl
James Sohn
11900 Shasta Circle
Cerritos, CA 90703-2720

Bryan M. Otake
Metropolitan Water
District
P.O. Box 54153
Los Angeles, CA 90054

1111 Sunset Blvd LLC
1855 Industrial Street
Ste 106
Los Angeles, CA 90021-
1239

33

W Dan Lee
Lee Law Offices
5670 Wilshire Blvd., Ste.
2150
Los Angeles, CA 90036


Downtown Capital LLC
Buchalter Nemer
Attn:  Michael Wachtell
Esq
1000 Wilshire Blvd Ste.
1500
Los Angeles, CA 90017

Yuval Bar-Zemer
1855 Industrial St., Ste.
709
Los Angeles, CA 90021

Parker Shumaker & Mills
800 W. 6th st. Ste. 500
Los Angeles, CA 90017

Victor A. Sahn
Sulmeyer Kupetz
333 Hope St. 3rd Fl.
Los Angeles, CA 90071

J. Scott Bovitz
Bovitz & Spitzer
1100 Wilshire Blvd. Ste.
2403
Los Angeles, CA 90017

*/s/ Julie King*
Julie King

68899-00007/2662454.6